UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELEWOOD TORRES,

                 Plaintiff,

        v.

MMS GROUP, LLC, et al.,

                 Defendants.

22 Civ. 6142 (DEH)

**OPINION & ORDER**

DALE E. HO, United States District Judge:

    Plaintiff Elewood Torres is a legally deaf individual who uses a wheelchair for mobility, and brings various claims against Defendants New York City Housing Preservation and Development ("HPD"), MMS Group LLC, New York State Division of Housing and Community Renewal, Housing Development Fund Corporation, NYSD Forsyth Housing Development Fund Company, Inc., and the New York Society for the Deaf. *See generally* Compl., ECF No. 1. Specifically, Plaintiff alleges that Defendants violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C Admin. Code § 8-101 *et seq.*; the Fair Housing Act ("FHA"); Section 504 of the Rehabilitation Act of 1973 ("RA"); and 42 U.S.C. § 1983.

    On November 7, 2023, Defendant HPD filed a motion to dismiss. *See* Mot. to Dismiss, ECF No. 86. On November 10, 2023, Plaintiff moved for preliminary injunctive relief and a temporary restraining order ("TRO"). *See* Prelim. Mot., ECF No. 90. On November 14, 2023, the Court held a conference, after which it denied Plaintiff's request for a TRO. *See* ECF No. 91.

    For the reasons below, Defendant HPD's motion to dismiss is **GRANTED** and Plaintiff's request for a preliminary injunction is **DENIED**.

1

I. **BACKGROUND**

The following facts are drawn from the allegations in the Complaint, and are assumed to be true solely for purposes of adjudicating Defendant HPD's motion to dismiss, *see Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023),[1] except where otherwise noted. To the extent that resolution of Plaintiff's motion for a preliminary injunction requires preliminary factual determinations, they are so noted below.

This case arises from Plaintiff's claims related to two buildings, located at 174-182 Forsyth Street, New York, NY 10002 and 184-186 Forsyth Street, New York, NY 10002 (collectively "the Premises" or "the Buildings"). Plaintiff Torres is a hearing-impaired and legally deaf person who alleges that he has been the subject of discrimination in his housing based on his disabilities. Compl. ¶¶ 2-3. Defendants are NYSD Forsyth Housing Development Fund Company, Inc., New York City Department of Housing Preservation and Development ("HPD"), (collectively the "Housing Defendants"), and Defendant T.U.C. Management Company, Inc. ("TUC"). Plaintiff alleges that all Defendants are owners of the Premises. *Id.* ¶¶ 18-26. But in its motion to dismiss, Defendant HPD asserts that "HPD and the City do not own, or manage the Subject Premises." HPD Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br."), ECF No. 86-8.

In his motion for a preliminary injunction, Plaintiff argues that Defendants have failed to "design, construct, maintain, operate and manage buildings to be fully accessible to and independently usable" by Plaintiff. Prelim. Mot. 11. Plaintiff states that "the elevators are not designed for deaf and hearing-impaired persons to receive assistance in emergency situations; the

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

2

fire alarm system is not designed to effectively alert deaf and hearing-impaired persons in the event of a fire, and the security personnel who are employed by the Defendants are incapable of communicating with the deaf and hearing-impaired residents." *Id.* at 1-2.

On January 5, 2024, Plaintiff agreed to withdraw his requested preliminary relief relating to elevators, pursuant to a Stipulation and Order. *See* ECF No. 104. The Court thus addresses Plaintiff's remaining two requests for preliminary relief: (1) implementing high-intensity strobe lights and bed shakers to alert people of a fire hazard; and (2) hiring 24/7 security staff who are either (a) fluent in American Sign Language ("ASL") or (b) equipped with devices that allow them to communicate effectively with deaf or hearing-impaired individuals. *See* Pl.'s Reply 2, ECF No. 115. The Court held a hearing on the preliminary injunction on February 9, 2024.[2] *See* ECF No. 116.

## II.  MOTION FOR PRELIMINARY INJUNCTION

### A. Legal Standards

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

---

[2] On February 15, 2024—one week after the February 9, 2024, hearing on the motion for a preliminary injunction—Plaintiff filed an additional letter and supplemental declaration in further support of the motion for preliminary injunction. *See* ECF Nos. 117, 117-1. Plaintiff's sur-reply was untimely pursuant to the Court's Individual Rules and Practices in Civil Cases Rule 4(c)(v), which states "[s]ur-reply memoranda are not allowed (unless specifically permitted in extraordinary situations for good cause)." Accordingly, the Court will not consider these sur-reply materials in deciding Plaintiff's motion.

A party seeking a preliminary injunction must demonstrate:

(1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor";
(2) a likelihood of "irreparable injury in the absence of an injunction";
(3) that "the balance of hardships tips in the plaintiff's favor"; and
(4) that the "public interest would not be disserved" by the issuance of an injunction."

*Benihana, Inc. v. Benihana of Tokyo*, *LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting,* 607 F.3d 68, 79-80 (2d Cir. 2010)).[3]

The Second Circuit "review[s] … denial of a preliminary injunction for abuse of discretion." *Ragbir v. Homan*, 923 F.3d 53, 62 (2d Cir. 2019). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. *Id* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018)). The district court has broad discretion in determining whether to grant or deny preliminary injunctive relief. *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 511 (2d Cir. 2005).

B. Discussion

1. **Likelihood of Success on the Merits**

To establish a likelihood of success on the merits, a plaintiff must show that he is more likely than not to prevail on his claims, or, in other words, that the "probability of prevailing is better than fifty percent.'" *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191

---

[3] Defendants argue that a heightened standard for preliminary relief applies here because Plaintiff seeks a mandatory injunction requiring Defendants to perform affirmative acts that alter the status quo. Housing Defs.' Opp'n 6, ECF No. 106. The Court does not address whether the heightened standard for mandatory injunctions applies here because, as explained below, the Court holds that Plaintiff has failed to satisfy the ordinary "likelihood of success on the merits" standard for preliminary relief.

(S.D.N.Y. 2000). As explained below, the Court finds that Plaintiff has not established a likelihood of success on the merits.

### a. Disability Discrimination – Failure to Accommodate Claims.

A plaintiff can prove disability discrimination under the ADA, RA, and FHA under one of three theories: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation. *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17 Civ. 8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019). Here, Plaintiff invokes the third theory, which makes it unlawful for defendants to fail "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." *Id.* at *16; *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities meaningful access to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

The elements necessary to state such a claim under Title II of the ADA, the FHA, RA, NYSHRL, and NYCHRL are substantially the same. *See, e.g., Skorupska v. 525 W. 52 Prop. Owner LLC*, 625 F. Supp. 3d 90, 108 (S.D.N.Y. 2022) (applying the same legal standards to housing discrimination claims under the FHA, ADA, the RA, NYSHRL, and NYCHRL).[4] To

---

[4] *See also Ragin v. Riverbay Corp.*, No. 20 Civ. 2233, 2021 WL 4057196, at *3 n.2 (2d Cir. Sept. 7, 2021) ("Here we evaluate the state law disability claim co-extensively with the federal claim because 'the scope of the disability discrimination provisions of [the NYSHRL] are similar to those of the [ADA].'"); *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 97-98 (2d Cir. 2012) (acknowledging "[t]he State-law claim [NYSCHRL] is coextensive" with the ADA claim); *Henrietta D.,* 331 F.3d at 272 (holding that "the District Court properly 'consider[ed the] . . . ADA and Rehab Act claims together" and the Second Circuit "do[es] so as well"); *Burris v. Hous. & Servs. Inc.*, No. 17 Civ. 9289, 2023 WL 1966120, at *6 n.6 (S.D.N.Y. Feb. 13, 2023)

state a claim for failure to accommodate a disability, the plaintiff must establish: "(1) that he was a qualified individual with a disability; (2) that the defendants are subject to the Acts they are alleged to have violated; and (3) that he was denied the opportunity to participate in or benefit from the defendants' services, programs, or activities, or was otherwise discriminated against by the defendants because of his disability." *Demirayak v. City of N.Y.*, 746 F. App'x 49, 52 (2d Cir. 2018) (cleaned up); *accord Shomo v. City of N.Y.*, 579 F.3d 176, 185 (2d Cir. 2009).

The first two elements are not in dispute. Defendants concede that Plaintiff is a qualified individual with disabilities. *See* TUC Opp'n 12, ECF No. 109. Defendants do not contest that they receive federal funding, *id.*, Housing Defs.' Opp'n 9, ECF No. 106; nor do Defendants dispute that they are subject to the relevant statutes (with the exception of Defendant HPD, as addressed below in the context of its motion to dismiss). *See generally* ECF Nos. 105-109.

But Defendants do dispute the third element, i.e., whether Plaintiff has been denied the "opportunity to participate in or benefit from" of some "services, programs, or activities," because of his disability. *Demirayak*, 746 F. App'x 49 at 52. With respect to physical premises, a defendant can discriminate within the meaning of the ADA against a plaintiff in various ways,

---

("[W]hether under Title VII [of the ADA], the Rehabilitation Act, or the FHA . . . the statutes are analyzed under similar standards."); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) ("Because '[t]he relevant portions of the FHA, ADA, and Section 504 of the Rehabilitation Act offer the same guarantee . . . analysis of a reasonable accommodation claim under the three statutes is treated the same."). *See also* Section III(B) n.8. While Title II of the ADA and Section 504 of the RA are "nearly identical," *McElwee v. Cnty. of Orange,* 700 F.3d 635, 640 (2d Cir. 2012), there are "subtle differences" between them, *Henrietta D.,* 331 F.3d at 272. For example, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding. *Id.* Although there are "differences between the statutes, such as the definition of disability, the Court has not found—and the parties have not identified—any relevant difference between the analysis required by the NYCHRL and the analysis required by the federal laws of the question at issue here." *Dicarlo v. Walgreens Boot All.*, No. 15 Civ. 2919, 2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2016) (cleaned up).

including by failing to remove architectural barriers "where such removal is readily achievable." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 369 (2d Cir. 2008). In his motion for preliminary injunction, Plaintiff argues that Defendants have failed to remove barriers to access in the form of the Premises' current fire alarm and security guard systems. In particular, Plaintiff contends that: (1) "the fire alarm system is not designed to effectively alert deaf and hearing-impaired persons in the event of a fire" and (2) "the security personnel who are employed by the Defendants are incapable of communicating with the deaf and hearing-impaired residents." Prelim. Mot. 1-2. Plaintiff requests the following accommodations to address these accessibility barriers: (1) installation of "special high intensity strobe lights," *id.* at 7, and "vibration notification appliance[s] (shakers)," *id* at 7-8; and (2) hiring security staff who are fluent in ASL or implementation of "devices that allow security and/or staff who are not fluent in ASL to communicate with deaf or hearing-impaired individuals," *id.* at 8. Defendants, for their part, respond by arguing that the existing alarm systems and security staff are in fact already accessible, Housing Opp'n 9; TUC Opp'n 12, and that Plaintiff's proposed accommodations are not "readily achievable or reasonable." Housing Defs.' Opp'n 10.

The Court finds that, at least at this stage of the litigation, Plaintiff has not established a likelihood of success on the merits.

### i.     *Fire Alarm System.*

With respect to the first issue, the fire alarm system, Defendants submit evidence that strobe lights—one of Plaintiff's two requested accommodations—were actually installed more than 10 years ago, and remain in place: "[t]he Buildings' current fire and smoke alarm systems, which have been in place since TUC began managing the Buildings [in 2013 and] . . . are equipped with strobe lights in every unit and common area. Every resident unit has three (3) sets of strobe lights in their living space and bathroom to assist and alert those with hearing

7

disabilities of fire and smoke." Aff. of Jeffrey P. Goldstein ("Goldstein Aff.") ¶¶ 5, 13-14, ECF No. 110; *see also* Goldstein Aff. Ex. E, ECF No. 11-5 (depicting installed strobe lights). Notably, despite his initial assertion in his opening brief that the fire alarm systems lacked strobe lights altogether, *see* Prelim. Mot. 7, 16, Plaintiff now concedes that strobe lights have in fact been installed, but nevertheless argues that "[t]he auditory alarm and strobe lights that the current alarm system is equipped with are not sufficient." Pl.'s Reply 3, ECF No. 115. But he did not timely submit any evidence supporting his assertion that the current strobe lights are inadequate and thus constitute an accessibility issue.

In support of his other requested fire safety accommodation, bed shakers, Plaintiff submits a smoke alarm flyer from the National Fire Protection Association, ECF No. 90-12, which states "[w]hen people who are deaf are asleep, a pillow or bed shaker can wake them so they can escape" and "[w]hen people who are hard of hearing are asleep . . . they may find a pillow or bed shaker helpful."[5] At most, this submission supports the notion that the addition of such devices to the Premises' fire alarm systems would be preferable, but it does not establish that its absence denies Plaintiff access such that it amounts to a barrier to accessibility within the meaning of the ADA and other relevant statutes.

### ii. Security Staff.

With respect to the second issue, the security staff, Plaintiff contends that he "cannot communicate with the security at the Subject Premises," *id.* at 14 and requests that Defendants hire security staff who are fluent in ASL or have devices that allow them to communicate with deaf or people who are hearing-impaired. Defendants, for their part, maintain that the security

---

[5] On Reply, Plaintiff argues that "bed shakers/bed rockers are shown to be more effective in waking a sleeping deaf person." Pl.'s Reply 3-4. As evidence, Plaintiff references the National Fire Protection Agency guidelines, but failed to attach them to his briefing. *Id.* at 4 n.3.

8

guards "ha[ve] tools to effectively communicate with the deaf and hard of hearing." *Id*. For instance, TUC Management President states "[t]here is an emphasis on written communication from staff, including the management, security and maintenance personnel, who all carry notepads and pens to ensure effective communication with deaf and hearing-impaired individuals in all situations." Goldstein Aff. ¶ 8. Security guards also have emergency communication boards for "quick dialogue." *Id.* Ex. A, ECF No. 110-1.

At the February 9, 2024, hearing, Plaintiff's counsel noted that the inability to communicate with security staff presents heightened concerns in an emergency. But when the Court asked whether there was evidence demonstrating how the security staff's current communication tools were ineffective, Plaintiff could not provide evidence of a particular instance in which the security staff were unable to communicate with deaf or hearing-impaired people during an emergency. Plaintiff's evidentiary submissions criticize the staff by stating that, for example, "[t]he security guards do not sign and are often asleep," or are otherwise unavailable because there is only one guard who must cover both buildings simultaneously. William Arnaz Declaration ("Arnaz Decl.") ¶ 12, ECF No. 90-4; ECF No. 90-6 ¶ 12 (same); ECF No. 90-7 ¶ 9 (similar); ECF No. 90-8 ¶ 12; ECF No. 90-9 ¶ 9 (similar); and ECF No. 90-10 at ¶ 9 (similar). While the Court acknowledges these concerns, they appear to be broad complaints about the quality and number of the security staff generally. Moreover, the Department of Housing and Urban Development ("HUD") has "recently approved the hiring of a second security guard, which will allow T.U.C. to assign one officer to each building." Housing Defs.' Opp'n 10. The Court cannot say, on this record, that the problems with the security staff stem from their inability to communicate in ASL or their lack of additional tools to communicate with deaf or hearing-impaired people, such that they rise to the level of a barrier for purposes of the relevant statutes.

Accordingly, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of his claims.[6]

### 2. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023). "[T]he moving party must first demonstrate that irreparable harm would be likely in the absence of a preliminary injunction before the other requirements for the issuance of a preliminary injunction will be considered." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015); *accord Frommer v. MoneyLion Techs. Inc.*, No. 23 Civ. 6339, 2023 WL 6850324, at *1 (S.D.N.Y. Oct. 17, 2023) ("[I]f a party fails to show irreparable harm a court need not even address the remaining elements"); *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17 Civ. 8028, 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (collecting cases).

The Court finds that Plaintiffs delay in seeking relief weighs against a finding of irreparable harm. Delay, "standing alone," may "preclude the granting of preliminary injunctive relief" because it "suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). There is no bright-line rule for how much delay is too much, but courts may deny preliminary relief in the face of "unexplained delays."

---

[6] Because the Court determines that, on this record, Plaintiff has not met his burden of establishing that the issues he has identified amount to burdens within the meaning of the ADA and other statutes, it does not address whether removal (in the form of the accommodations he seeks) is "readily achievable." The Court also does not address Plaintiff's 1983 claim separately, because it is predicated on the same alleged deprivation of rights that underlie his failure to accommodate claims pursuant to the FHA, ADA, and RA claims. *Cf. City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005) (Section 1983 "authorizes suits to enforce individual rights under federal statutes as well as the Constitution.").

*Coscarelli v. Esquared Hosp. LLC*, 364 F. Supp. 3d 207, 222 (S.D.N.Y. 2019) (citing *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998).

Here, the circumstances that Plaintiff complains of have persisted for years (or, in the case of the purportedly absent strobe lights, were addressed many years ago, *see supra*). Even after filing this lawsuit, Plaintiff did not move for a preliminary injunction for more than a year. And Plaintiff separately sought three separate extensions to oppose HPD's motion to dismiss, which does not suggest the sort of alacrity one might expect of a litigant eager to expedite proceedings. See ECF Nos. 79, 81, 84. Such delays, by themselves, may not constitute a basis to find an absence of irreparable harm in every case; but Plaintiff's failure to explain how his delays are consistent with his purported need for emergency relief *now* cuts against a finding of irreparable harm here.[7]

For the aforementioned reasons, Plaintiff's motion for preliminary injunctive relief is **DENIED**.

### III.   MOTION TO DISMISS

#### A. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In

---

[7] Plaintiff's failure to demonstrate a likelihood of success on the merits and his failure to establish irreparable harm are each, by themselves, sufficient bases to deny injunctive relief. *See Salinger*, 607 F.3d at 75 n.5; *Frommer*, 2023 WL 6850324, at *1. Accordingly, the Court does not consider the remaining factors regarding the balance of hardships and the public interest. *See also Conn. State Police Union v. Rovella*, 36 F.4th 54, 68 (2d Cir. 2022) ("Because the District Court did not err in concluding that the [plaintiff] could not succeed on the merits of its claim, we need not address the remaining prongs of the preliminary injunction test, including whether the [plaintiff] demonstrated irreparable harm or whether an injunction would be in the public interest.").

assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Accordingly, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020). "In considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "Where a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016).

**B. Discussion**

Here, all of Plaintiffs' claims against Defendant HPD are premised on the allegation that HPD "is an owner of the Premises." Compl. ¶ 18.[8] As discussed above in Section II, to state a claim for violation of Title III, a plaintiff must "establish that (1) he or she is disabled within the

---

[8] Plaintiff does not allege that HPD is the lessee, proprietor, manager, superintendent, or employee of the subject property. *See generally* Compl.

12

meaning of the ADA; (2) that the defendants *own, lease, or operate* a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts*, 542 F.3d at 368 (emphasis added).  And Plaintiffs' other claims against HPD turn on the same allegation of ownership.[9]

In its motion to dismiss, Defendant HPD argues that it does not own the Premises and that they are not places of public accommodation.  *See generally* HPD Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br."), ECF No. 86-8.  To demonstrate that it does not own the Premises, HPD submits the deeds transferring the Premises, *see* ECF Nos. 86-2, 86-3, 86-4, and 86-6, as well as the relevant Land Disposition Agreement ("the LDAs" or "the Agreements"), which conveyed ownership of the Buildings to the NYHSD Housing Development Fund

---

[9] As noted, the standards for violations of the ADA, the FHA, and the RA in this context are substantially the same. *See Forziano v. Indep. Grp. Home Living Program*, 613 F. App'x 15, 18 (2d Cir. 2015) ("Because of similarities in the three statutes, intentional discrimination claims under the ADA, Rehabilitation Act, and FHA are considered in tandem.").  Plaintiff's Section 1983 claim is predicated on a violation of a federally-protected right.  *Cf. City of Rancho Palos Verdes*, 544 U.S. at 119.  And Plaintiff's New York State and New York City claims are similarly predicated on HPD's ownership of the Premises.  *See* N.Y. Exec. Law §296(2)(a) (liability under the NYS HRL for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation"); N.Y. Exec. Law 296(a) (same); N.Y. Civil Rights Law § 40 (liability under the NYS CRL for "owner, lessee, proprietor, manager, superintendent, agent or employee of any such place [of public accommodations]"); N.Y. Exec. Law § 296(2-a) (liability for "owner, lessee, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations or other person having the right of ownership or possession"); N.Y.C. Admin Code §8-107(4) (liability under the NYCHRL for "owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation"); N.Y.C. Human Rights Law Admin Code §8-107(28)(b) (liability for "the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation").

Corporation, and the NYSD Forsyth Housing Development Fund Company, Inc., in 1992 and 2000, respectively.[10] *See* 1992 LDA, ECF No. 86-5; 2000 LDA, ECF No. 86-7.

In response, Plaintiff acknowledges that HPD sold the Buildings to NYSD Housing and NYSD Forsyth, but argues that HPD and the City of New York maintained a future possessory interest and a possibility of reverter under various provisions of the LDAs. *See* Pl.'s Opp'n 9, ECF No. 97. According to Plaintiff, title for the Premises automatically reverts back to HPD and the City of New York if there is a breach in the LDAs, which Plaintiff argues in his opposition brief (but did not allege in his complaint) has happened here, thus making HPD the current owner of the Premises. *See* Pl.'s Opp'n 2-3, 9.

But Defendant HPD correctly notes that the reverter provision of the LDAs, Section 502(2), is not automatic in the event of an alleged breach, and rather requires a "written demand by the City" to trigger reverter. *See* 1992 LDA 19, ECF No. 86-5; 2000 LDA 18, ECF No. 86-7.

---

[10] Ordinarily, a court may not consider documents extrinsic to a complaint on a motion to dismiss. But a court may, on a 12(b)(6) motion, take "judicial notice of public documents relating to . . . [p]roperty," such as a deed or chain of title. *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022). The Second Circuit has explained that "[u]nder Federal Rule of Evidence 201(b)(2), courts may judicially notice facts that are 'not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Richardson v. N.Y. City Bd. of Educ.*, 711 F. App'x 11, 13 (2d Cir. 2017). Here, the relevant deeds and LDAs are publicly available, and can be found on the New York City Automated City Register Information System ("ACRIS") website; a source "whose accuracy cannot be reasonably questioned" and whose documents are the proper subject of judicial notice. *Id. See, e.g., Cummins v. Select Portfolio Servicing, Inc.*, No. 14 Civ. 5121, 2016 WL 4766237, at *1 n.2 (E.D.N.Y. Sept. 13, 2016) (accessing and taking judicial notice of publicly available ACRIS records); *Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC*, 443 F. Supp. 3d 494, 497 n.1 (S.D.N.Y. 2020) ("The Court may take judicial notice of the publicly recorded deed on this motion to dismiss."); *In re Ditech Holding Corp.*, No. 19 Civ. 10412, 2021 WL 5225840, at *15 (Bankr. S.D.N.Y. Nov. 9, 2021) (taking judicial notice of a property deed attached to briefings). In any case, Plaintiff does not dispute the accuracy of these documents, or the propriety of the Court considering them on HPD's 12(b)(6) motion; to the contrary, Plaintiff himself attaches them as exhibits to his opposition brief, purportedly to support his allegation that HPD is an owner of the Premises. *See* ECF Nos. 97-1, 97-2, 97-3, 97-4.

Plaintiff does not allege (and HPD denies) that any such written demand has occurred here. *See* HPD Reply 3, ECF No. 101.  Moreover, the plain language of the LDAs makes evident that non-parties to the LDAs, such as the Plaintiff, cannot invoke the reverter provision to give HPD ownership of the Buildings.  Section 505 of the LDAs specifies that "nothing expressed in or to be implied from this Agreement is intended or shall be construed to give *any person*, firm or corporation other than the parties hereto and the holder of the Mortgage any legal or equitable right, remedy or claim under this Agreement, all such provisions being for the sole and exclusive benefit of the parties hereto and the holder of such Mortgage." *Id.* (emphasis added).  Thus, even if there had been a violation of the LDAs (which, again, Plaintiff did not allege in his Complaint), Plaintiff would have no standing to invoke such a violation for purposes of reverter.

In sum, because HPD is not the owner of the Premises, Plaintiff cannot maintain his claims against it.[11]

**C. Leave to Amend**

The Court denies Plaintiff leave to amend his complaint to add the City of New York as a defendant.  *See* Opp'n Br. 17.  The Federal Rules of Civil Procedure provide that "a party may amend its pleadings . . . [with] the court's leave[,]" and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Five factors guide the exercise of a district court's discretion to allow leave to amend: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; and (5) futility of the amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend may be denied if "amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481,

---

[11] Because the Court dismisses all claims against HPD based on the fact that HPD does not own the Premises, it does not consider HPD's other arguments, including its argument that the Buildings are not public accommodations and therefore not subject to Title III of the ADA.

491 (2d Cir. 2006)). "Amendment is futile if it fails 'to cure prior deficiencies.'" *Id*. (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc*., 681 F.3d 114, 119 (2d Cir. 2012)).

Plaintiff suggests he would amend the complaint by "includ[ing] the City of New York as a named defendant in place of Defendant HPD." Opp'n Br. 17. Replacing Defendant HPD with the City of New York, however, would not correct the deficiency identified above. As HPD does not own the Premises, neither does the City of New York. Leave to amend would be futile, and the Court will not grant leave to amend.

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion for preliminary injunction and **GRANTS** Defendant HPD's motion to dismiss.

The Clerk of Court is respectfully directed to close ECF No. 86 and terminate Defendant New York City Housing Preservation and Development.

SO ORDERED.

Dated: July 2, 2024
New York, New York

DALE E. HO
United States District Judge