UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEWOOD TORRES, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>MMS GROUP LLC. d/b/a MMS GROUP, NEW YORK CITY HOUSING PRESERVATION AND DEVELOPMENT, NEW YORK STATE DIVISION OF HOUSING and COMMUNITY RENEWAL, NYSD HOUSING DEVELOPMENT FUND CORPORATION, NYSD FORSYTH HOUSING DEVELOPMENT FUND COMPANY, INC., T.U.C. MANAGEMENT COMPANY, INC., NEW YORK SOCIETY FOR THE DEAF,<br><br>        Defendants. | 22-CV-6142 (DEH)<br><br>OPINION & ORDER |

DALE E. HO, United States District Judge:

  Plaintiff Elewood Torres brings various federal and state law claims on behalf of himself and all others similarly situated against Defendants New York City Housing Preservation and Development ("HPD"), MMS Group LLC ("MMS"), New York State Division of Housing and Community Renewal, NYSD Housing Development Fund Corporation, NYSD Forsyth Housing Development Fund Company (together with NYSD Housing Development Fund Corporation, the "Housing Defendants"), T.U.C. Management Company, Inc. ("TUC"), and the New York Society for the Deaf (collectively, "Defendants"). In substance, Plaintiff claims that Defendants (1) failed to maintain buildings to be "independently usable by Plaintiff and other deaf or hearing-impaired individuals" and (2) "failed to provide access to housing for individuals with disabilities pursuant" to applicable law on properties Defendants maintained. Compl. ¶ 3, ECF No. 1.

Before the Court is the January 27, 2025 Report and Recommendation ("Report" or "R&R") issued by Magistrate Judge Valerie Figueredo recommending that Plaintiff's Motion for Class Certification, ECF. No. 128, be granted as to Counts Three, Four, Five, Six, Seven, Eight, Ten, and Eleven of their Complaint with modifications to Counts Three, Four, Five, Six, Seven, Eight, and Eleven. *See* R&R at 38, ECF No. 163. For the reasons stated below, the well-reasoned Report and Recommendation is **ADOPTED IN FULL**.

Also before the Court is the Housing Defendants' motion to seal certain sensitive medical information submitted in connection with their objections to the Report, ECF No. 175. For reasons explained below, the motion is **GRANTED**.

## BACKGROUND

Familiarity with the factual background and relevant procedural history of this case as set out in Magistrate Judge Figueredo's Report is assumed. *See generally id.* at 2-5. This action was referred to Magistrate Judge Figueredo for general pretrial supervision and for report and recommendation on dispositive motions. *See* Order of Reference to Magistrate Judge, ECF No. 24. On August 7, 2024, Plaintiff filed a Motion for Class Certification, ECF No. 128. Housing Defendants and TUC filed their respective Oppositions to Plaintiff's Motion on October 21, 2024. *See* Housing Defs.' Opp'n, ECF No. 149; *see* TUC Opp'n, ECF No. 152. On January 27, 2025, Magistrate Judge Figueredo issued a Report and Recommendation addressing the pending motion for class certification. *See* R&R. On February 28, 2025, Plaintiff filed their Objection to the Report. *See* Pl.'s Obj., ECF No. 174. That same day, the Housing Defendants and TUC each filed their respective Objections to the Report, and on March 14, 2025, they filed their Oppositions to Plaintiff's Objection. *See* Housing Defs.' Objs., ECF No. 171; *see* TUC's Objs., ECF No. 172; *see* Housing Defs.' Opp'n to Pl.'s Objs., ECF No. 177; *see* TUC's Opp'n to Pl.'s Obj., ECF

No. 178. After reviewing the Report and the parties' objections and oppositions, the Court adopts the Report in its entirety.

## LEGAL STANDARD

### I. Standard of Review

United States Magistrate Judges may "hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 67 (S.D.N.Y. 2013).[1] A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" when reviewing a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Parties may file "written objections" to the magistrate judge's "proposed findings and recommendations." *id.*; *see* Fed. R. Civ. P. 72(b) (same). In reviewing objections, "the district court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made." *Vaccariello*, 295 F.R.D. at 67. The district judge has discretion when weighing the recommendations and proposed findings. *See United States v. Raddatz*, 447 U.S. 667, 683 (1980) (holding that the "delegation does not violate Art. III so long as the ultimate decision is made by the district court").

The parties' objections to a report and recommendation "are to be specific and are to address only those portions of the proposed findings to which [a] party objects." *Vaccariello*, 295 F.R.D. at 67. "[M]erely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers]" do not trigger *de novo* review. *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sep. 30, 2002). Further, "a

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019); *see Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.").

When there is no timely objection by either party, the district court may accept the report and recommendation if "there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y.1985). If a party "makes only conclusory or general objections, or simply reiterates the original arguments, the [c]ourt will review the [r]eport strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 6 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

## II. Class Certification

In order to succeed on a motion for class certification, a plaintiff "must establish by a preponderance of the evidence that it has met each of the relevant Rule 23 requirements." *Maroney v. Woodstream Corp.*, No. 19 Civ. 8294, 2025 WL 945874, at *3 (S.D.N.Y. Mar. 28, 2025). Rule 23(a) requires parties seeking class certification to establish that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class." *Id.* (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y.)). These factors are respectively referred to as numerosity, commonality, typicality, and adequacy. *See id.* "A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the

prerequisites of Rule 23(a) . . . are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

In addition to Rule 23(a)'s factors, plaintiffs must demonstrate at least one of three grounds for class certification under Rule 23(b). First, plaintiffs may show that "prosecuting separate actions by or against individual class members would create a risk of" either (1) "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for the defendants; or (2) adjudications that would, in practice, determine or substantially impair the individual interests of absent class members who are "not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1). Second, plaintiffs may show that the defendants "acted or refused to act on grounds that apply generally to the class," making either "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Third and lastly, plaintiffs may establish that common "questions of law or fact . . . predominate over" individual questions pertaining to individual members such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ P. 23(b)(3). Courts respectively refer to these two elements within this last composite factor under Rule 23(b)(3) as predominance and superiority. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 615-16 (1997); *see, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 468-469 (S.D.N.Y. 2005).

Finally, the ascertainability requirement is "a threshold requirement that the members of a proposed class be readily identifiable." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). To satisfy ascertainability, "a representative party need only show the existence of objective criteria that establish a membership with definite boundaries." *Maroney*, 2025 WL 945874, at *3.

## DISCUSSION

The Report recommends that Plaintiff's Motion for Class Certification be granted with modifications. First, the Report finds that Plaintiff has satisfied Rule 23's requirements and recommends class certification as to Counts Three, Four, Five, Six, Seven, Eight, Ten, and Eleven of Plaintiff's Complaint. R&R at 38. Second, the Report recommends narrowing the proposed class period for all Counts on which it recommends granting class certification. *Id.* For Counts Three, Four, Five, Six, Seven, Eight, and Eleven, the Report recommends changing the proposed class definition "to include: (1) the hearing impaired and/or deaf residents and visitors of the 184 Premises on or after July 19, 2019; and (2) the hearing impaired and/or deaf residents and visitors of the 174 Premises on or after July 19, 2019." *Id*. For Count Ten, the Report recommends "modifying the class definition to: (1) the hearing impaired and/or deaf residents and visitors of the 184 Premises on or after July 19, 2020; and (2) the hearing impaired and/or deaf residents and visitors of the 174 Premises on or after July 19, 2020." *Id*. Both modifications are narrower than Plaintiff's proposed time period of January 1, 2000 to January 1, 2024 for all class members. *See id.* at 6; Pl.'s Mem. Supp. Class Certification at 9, ECF No. 130.

This Court reviews Magistrate Judge Figueredo's Report by taking each of the parties' objections in turn,[2] evaluating whether the objections are (1) conclusory, (2) repetitive of the previous arguments, or (3) previously available to Defendants before the Report but not raised. If an objection reflects none of these three criteria, the Court analyzes the issue *de novo*. *See supra* at 3. Otherwise, the Court evaluates the recommendations of the Report without properly raised objections only for clear error.

---

[2] The Defendants each make similar objections except where otherwise attributed to a specific Defendant.

### A. Article III Standing

Defendants first object to the Report on the grounds that Magistrate Judge Figueredo misapplied the legal standard and erred in finding Plaintiff has Article III Standing. Housing Defs.' Objs. at 7. Specifically, they argue that the R&R (1) "relied upon inapposite case law," (2) "ignored the evidence submitted by Defendants," and (3) "found Plaintiff alleged an injury in fact simply because the Complaint alleged that Defendants discriminated against, or failed to accommodate, deaf and hard of hearing individuals who live in or visit the Premises." *Id.* at 8.

Defendants' argument that the Report ignored evidence is essentially a "perfunctory response[] argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers]." *Vega*, 2002 WL 31174466, at *1. Defendants' objection to Plaintiff's Article III standing is supported only by Defendants' arguments in prior filings. *See* Housing Defs.' Opp'n at 6. Indeed, the R&R *did* consider Defendants' evidence, but concluded that the evidence raised only "a question of fact that need not be resolved at the class certification stage." *See e.g.*, R&R at 13 n.5. Similarly, Defendants provide no analysis explaining why the Report's finding of Plaintiff's alleged injury-in-fact was incorrect. Instead, Defendants restate factual claims and arguments from prior filings. Consequently, neither Defendants' evidentiary argument nor their injury-in-fact argument against Plaintiff's standing warrant *de novo* review.

However, Defendants' challenges to the Report's characterization of cited case law warrant further analysis, as they were not raised or available before the Report. *Cf. Gladden*, 394 F. Supp. 3d at 480 (holding analogously that "a district judge will not consider new arguments raised in objections to a magistrate judge's [R&R] that could have been raised before the magistrate but were not"). In concluding that Plaintiff's allegations are sufficient "to plead an injury in fact that is directly traceable to Defendants' conduct, given that the Housing Defendants own the Buildings and TUC manages the Buildings," the Report cites *Lowell* and *Tucker*. R&R at 14; *see Lowell v.*

7

*Lyft, Inc.*, 352 F. Supp. 3d 248, 255-56 (S.D.N.Y. 2018) (holding that the plaintiff "plausibly claimed an injury" in fact under the New York State Human Rights Law "for the purposes of standing" because the court "would likely be able to redress the injury by requiring Defendant to comply with accessibility laws"); *Tucker v. Denny's Corp.*, No. 19 Civ. 9843, 2021 WL 4429220, at *1 (S.D.N.Y. Sep. 27, 2021) (holding that the plaintiff had standing because the facts were "sufficient to demonstrate that [he] was deterred from visiting Defendant's location, showing injury in fact"). Defendants argue that *Lowell* and *Tucker* are inapposite, because those courts were evaluating "pre-answer motions to dismiss, where the court must accept as true all material allegations of the Complaint." Housing Def.'s Objs. at 8 n.5. Defendants are correct that the standard courts apply to motions for class certification and to a pre-answer motion to dismiss are distinct, but this difference is not dispositive here. As the Report finds, "[w]hether Plaintiff has Article III standing and 'whether [class] certification should be granted' are 'separate inquiries . . . .'" R&R at 10-11 (quoting *Heggs v. City of New York*, No. 17 Civ. 3234, 2023 WL 9786044, at *8 (E.D.N.Y. Aug. 24, 2023). As such, Magistrate Judge Figueredo was correct in "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor" when finding the representative Plaintiff had alleged an injury-in-fact successfully. *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Having reviewed the remainder of the Report for clear error as to Plaintiff's Article III standing, the Court finds none.

    **B.**    **Rule 23(a)**

Defendants next object to the Report on the grounds that the Court erred in concluding that Plaintiff met his evidentiary burden to "establish by a preponderance of the evidence that the elements of Rule 23(a) have been met." Housing Defs.' Objs. at 12. Under Rule 23(a), Plaintiff must show that the elements of "numerosity, commonality, typicality, and adequacy, as well as an implied requirement of ascertainability" of the class are met. *Shi Ming Chen v. Human Manor*

8

*Enter., Inc.*, No. 17 Civ. 802, 2021 WL 2282642, at *2 (S.D.N.Y. June 4, 2021). Most of Defendants' arguments as to these elements are "a rehashing of the same arguments" they already made in their previous filings and therefore "will not suffice to invoke *de novo* review." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009). Further, the Court need not consider Defendants' new arguments as to the ascertainability and numerosity requirements because Defendants did not raise them prior to the Report despite their availability to Defendants. *See Gladden*, 394 F. Supp. 3d at 480. However, some of their new challenges to the characterization of the case law by Magistrate Judge Figueredo warrant *de novo* review, as they were not available previously. The Court addresses these issues in turn below.

    1. Adequacy, Commonality, and Typicality

Defendants object to the Report's findings that Plaintiff successfully established the elements of adequacy, as well commonality and typicality. Housing Defs.' Objs. at 19-22. These arguments are simply restatements of those found in Defendants' prior papers and do not warrant *de novo* review. *See Owusu*, 655 F. Supp. 2d at 313. Defendants argue that in finding commonality and typicality, the Report glossed over "evidence that shows unique defenses apply to at least some people in the class (*e.g.*, Plaintiff)." Housing Defs.' Objs. at 21. But Magistrate Judge Figueredo did consider Defendants' arguments, and she rejected them. *See* R&R at 19-22.[3] Further, Defendants argue that, in finding adequacy, the Report erred by ignoring facts that they presented. Housing Defs.' Objs. at 22. However, as Defendants acknowledge, these facts were put "forth in

---

[3] Defendants also offer medical records that "were not available when Plaintiff's motion for class certification was briefed," Donohue Decl. ¶ 4, ECF No. 170, to suggest that unique defenses are available—but the only information they point to in those records was already present in medical records Defendants previously submitted to Magistrate Judge Figueredo in opposition to the Motion for Class Certification. *Compare* Housing Defs.' Objs. at 11 n.13, *with* Donoghue Decl. Ex. B at 23, ECF No. 148-2.

the[ir] Opposition Papers." *Id.* Magistrate Judge Figueredo evaluated Plaintiff's adequacy in light of the complete record, *see* R&R at 23-25, and this Court finds no clear error in her analysis.

    2. Ascertainability

Defendants argue that in finding that Plaintiffs had met the ascertainability requirement, "the [Report] relied on the fact that, in some other cases, courts have certified classes of disabled individuals." Housing Defs.' Objs. at 13. Specifically, they argue that the Report "overlooked the facts that (1) those other cases are inapposite, (2) Plaintiff bears the burden to show ascertainability, (3) in this case, Plaintiff offered no basis to suggest how Defendants can identify most people in the proposed class at any point without resorting to mini-trials, and (4) Plaintiff offered no method by which the parties could exclude members who lack Article III standing." *Id*. Because Defendants' arguments as to the last three points (i.e., the burden of showing ascertainability, the identification of members of the class, and Plaintiff's alleged failure to offer an exclusion method) could have been raised previously, they do not warrant *de novo* review. *Compare id.* at 14 (arguing that "even if the individuals were permitted to simply assert class membership through declarations, Defendants would have the right to challenge them by cross-examination, necessitating class-defeating mini-trials"), *with* Housing Defs.' Opp'n at 16 ("[T]here would need to be an evaluation of each person to confirm that they visited the Premises, plan to visit in the future, and that they are actually deaf or hard of hearing."). In any event, the Court finds no clear error in Magistrate Judge Figueredo's analysis of these points.

However, Defendants' arguments as to the Report's characterization of the case law are new and warrant analysis. *Cf. Gladden*, 394 F. Supp. 3d at 480 (explaining that district judges will only consider new arguments not raised previously in objections to a report and recommendation). Defendants argue that *Westchester* and *Duprey*, cited by the Report, are inapposite because unlike in those cases, "[t]his lawsuit concerns two residential buildings that are not accessible to the public

10

at large" and "there has been no showing that the alleged barriers would be encountered by anyone who is simply present on the premises." Housing Defs.' Objs. at 15-16 (distinguishing *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279 (S.D.N.Y. 2019) and *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329 (D. Conn. 2000) from the present case).

Defendants are incorrect. With respect to *Duprey*, the Report did not cite it in its ascertainability analysis. *See* R&R at 26-31. As to *Westchester*, whether or not the *public* can access the building has no bearing on the holding that "determining whether individuals are deaf or hearing impaired is a readily ascertainable metric." *Id.* at 27 (citing *Westchester*, 331 F.R.D. at 299 (holding that "whether the person has a mobility disability and whether the person has used or will use a pedestrian right-of-way on the campus" are "ascertainable")). Therefore, Magistrate Judge Figueredo's application of the case law was appropriate.

3. Numerosity

Defendants argue that in concluding Plaintiff had met the numerosity requirement, the Report (1) "mischaracterized relevant case law" and (2) "relied on Plaintiff's claim that there are at least 50 residents [on] the premises who are deaf or hard of hearing and that the class members are deaf or hard of hearing and low income." Housing Defs.' Objs. at 16. The latter point—Defendants' challenge to Plaintiff's numerosity argument—is a restatement of their prior arguments, and this Court need not consider it *de novo*. *See Vega*, 2002 WL 31174466, at *1; *see* Housing Defs.' Opp. at 19 ("Plaintiff claims that the putative class is greater than forty since there are at least fifty residents at the Premises . . . These assertions are not persuasive."). The Court has reviewed the Report's analysis on this point and finds no clear error.

The first argument, however, is new and was previously unavailable; it therefore must be reviewed *de novo*. Numerosity is "presumed when a class consists of forty or more plaintiffs."

11

*Grant v. N.Y. Times Co.*, 329 F.R.D. 27, 31 (S.D.N.Y. 2018) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In addition to mere numbers, courts often consider what are referred to as the "*Robidoux* factors." *See, e.g.*, *Abbananto v. Cnty. of Nassau*, No. 19 Civ. 1102, 2022 WL 326982, at *4 (E.D.N.Y. Feb. 3, 2022). These factors include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The *Robidoux* factors are particularly salient in cases with the number of plaintiffs "falling into the gray area between [twenty-one] and [forty] class members." *Grant*, 329 F.R.D. at 31.

Here, Defendants argue that the Report incorrectly concluded that *Strykers Bay* is inapplicable to the present case. The Report reasoned that *Strykers Bay* was inapposite because in that case "there were only 32 possible families in the proposed class," which is within the 21-to-40-member gray area, where the *Robidoux* factors are "particularly salient." R&R at 17-18 (citing *Strykers Bay Neighborhood Council, Inc. v. City of New York*, 695 F. Supp. 1531, 1537 (S.D.N.Y. 1988)); *see Abbananto*, 2022 WL 326982, at *3 (holding that the *Robidoux* factors "become particularly salient in circumstances where the size of the proposed class falls in the so-called 'gray-area' of between twenty-one and forty members"). Defendants argue that in *Strykers Bay* "there would have been at least 64 members of the proposed class" (i.e., at least two people per family), thereby bringing the class outside the gray area and making the case applicable here. Housing Defs.' Objs. at 18. Setting aside whether Defendants are correct as a factual matter as to the class size in *Strykers Bay*, the Court finds the case inapposite for another reason: *Strykers Bay* was decided in 1988, before the Second Circuit's decision in *Consolidated Rail* establishing a presumption of numerosity above 40 class members. *Contrast Strykers Bay*, 695 F. Supp. at 1537-

38, *with Consol. Rail Corp.*, 47 F.3d at 483. Accordingly, even if the class size had been above 40 members in *Strykers Bay*, the case is not relevant here given that it did not apply the presumption that is now the law in the Second Circuit.

Further, Defendants argue that *Matyasovszky* was inapposite and that the Report erred in relying on it. The Report quotes *Matyasovszky*'s holding that the "low income, disabled" character of putative class "ma[de] joinder impracticable." R&R at 18 (quoting *Matyasovszky v. Hous. Auth. of Bridgeport*, 226 F.R.D. 35, 40 (D. Conn. 2005)). Defendants state that the case was inapplicable because, unlike the present case, it "involved a proposed class that was necessarily fluid and difficult to contact, and, in some cases [experiencing] homeless[ness]," while here "Plaintiff knows or should know every person who could be in the putative class because [Plaintiff] has lived in both buildings and has been a resident for over two decades." Housing Defs.' Objs. at 18-19. Defendants are correct that the case is not precisely analogous, as *Matyasovszky* specifically reflected a class of disabled housing *applicants* who were therefore more difficult to contact due their unstable housing status, while, here, members of the class are more likely to be housed. *See Matyasovszky*, 226 F.R.D. at 40-41 (finding "joinder impracticable and undesirable, particularly given the circumstances cited . . . by plaintiffs," who had argued "that a class comprised of applicants for disabled housing is necessarily fluid"). But Magistrate Judge Figueredo relied on *Matyasovszky* only for additional support, and her overall analysis remains sound even without relying on *Matyasovszky*.

The Court has carefully reviewed the Report, and does not find any error, clear or otherwise, with the Report's recommendation to hold that Rule 23(a) is satisfied.

### C.   Rule 23(b)(3)

Defendants next object to the Report's finding that Plaintiff satisfied Rule 23(b)(3). Defendants' arguments here are largely "rehashing" the arguments in their previous filings, and

do not warrant *de novo* review. *Owusu*, 655 F. Supp. 2d at 313. With respect to those issues, the Court has reviewed the Report and finds no clear error.

The only argument that was not previously available to Defendants is their challenge to the Report's characterization of the case law, Housing Defs.' Objs. at 24 n.18, which, accordingly, warrants *de novo* review. *See Gladden*, 394 F. Supp. 3d at 480. Specifically, Defendants challenge the Report's reliance on *Maziarz*, which the Report cited as an example of where the predominance requirement was met. The Report observed that, in *Maziarz*, a "class of tenants in senior-disabled housing units brought claims alleging [the town's] 'policies violate[d]' the Fair Housing Act and was 'subject to common proof' as to whether the statute was violated." R&R at 36 (citing *Maziarz v. Hous. Auth. of the Town of Vernon*, 281 F.R.D. 71, 84 (D. Conn. 2012)). Defendants argue that because the town's policies "applied universally to any and all residents, . . . there were no unique defenses in the record," rendering the case inapposite to this one. Housing Defs.' Objs. at 24 n.18. But the presence (or absence) of unique defenses is not necessarily dispositive in finding predominance. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (holding that the existence of "important matters . . . such as . . . affirmative defenses peculiar to some individual class members" does not necessarily preclude a finding of predominance). Because the availability of unique defenses is not outcome determinative, the absence of such defenses in *Maziarz* does not make the case otherwise inapplicable here.

Defendants further argue that a class action is not superior to litigating cases individually because "this would just entail mini-trials for each and every class member," making it a "monumental waste of the Court's resources." Housing Defs.' Objs. at 24-25. This argument is identical to the one raised in Defendants' prior briefs. *See* Housing Defs.' Opp'n at 25 (arguing that "[a]djudicating these issues will require a review of each class member, including their medical records," and, "to the extent any liability might possibly exist, determining appropriate

damages would involve issues of individualized proof," such that "a class action would be a monumental waste of the Court's resources"). Therefore, *de novo* review as to these arguments is not warranted. *See Vega*, 2002 WL 31174466, at *1. The Court has carefully reviewed the Report and does not find any error, clear or otherwise, with the Report's recommendation to hold that Rule 23(b)(3) is satisfied.

### D. The Class Period

Plaintiff objects to the Report on the grounds that the Court erred in narrowing the class period on the grounds that, under the continuing violation doctrine, "class members' claims which occurred from 2000 through 2019 (prior to the class period as defined in the [Report]) . . . should be included." Pl.'s Objs. at 4, ECF No. 174. Specifically, Plaintiff argues that (1) "The continuing violation doctrine has been applied in claims of housing discrimination where the challenged actions are 'repeated' or 'continuing'" and (2) "Plaintiff has established a continuing violation because specific related instances of discrimination were permitted by Defendants to be repeated and unremedied for so long as to amount to a discriminatory policy or practice." Pl.'s Objs. at 6-7.

Plaintiff's arguments here are mere "rehashing of the same arguments" of those in their previous filings and therefore do not warrant *de novo* review. *Owusu*, 655 F. Supp. 2d at 313. The Court reviews this portion of the Report only for clear error, and does not find any error, clear or otherwise, with the Report's narrowing of the eligible class period.

### E. The Remainder of the Report

No party objects to the Report's recommendations to deny class certification as to Counts I and II or its recommendation that Rule 23(b)(2) was not satisfied. Nevertheless, this Court has reviewed these recommendations for clear error and finds none.

15

### F. Motion to Seal

The Housing Defendants' motion to seal certain sensitive medical information submitted in connection with their objections to the Report, *see* ECF No. 175, is **GRANTED**. No party objects to the motion. While there is a presumption of public access to court documents, documents may be kept under seal where "necessary to preserve higher values" and where the sealing is "narrowly tailored to achieve that aim." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The protection of sensitive health information is one such higher value. *See, e.g.*, *Robinson v. De Niro*, No. 19 Civ. 9156, 2022 WL 2712827, at *2 (S.D.N.Y. July 13, 2022). Here, the Court concludes that sealing is justified and that the proposed redactions are narrowly tailored to the protection of Plaintiff's private health information.

### CONCLUSION

For the reasons given above, the Report and Recommendation is **ADOPTED IN FULL**. The class is certified consistent with the Report's Recommendation. *See* R&R at 38.

The Clerk of Court is respectfully directed to terminate ECF Nos. 128 and 175.

SO ORDERED.

Dated: September 16, 2025
       New York, New York

                                                                    _____
                                                                    DALE E. HO
                                                                    United States District Judge